MABEL BADOCK, Appellant, v. J. J. DUNNEGAN CONSTRUCTION COMPANY, a Corporation, and CITY OF ST. LOUIS, a Municipal Corporation.—59 S. W. (2d) 631.

Division One, April 20, 1933.

*W. F. Stahlhuth* for appellant.

878

*Jones, Hocker, Sullivan & Angert* and *Ralph T. Finley* for respondent.

FRANK, P. J.—Action to recover damages for personal injuries. The trial resulted in a verdict for plaintiff for $550. The verdict was set aside and a new trial granted on the ground that error was committed in refusing to direct a verdict for defendants. Plaintiff appealed to the St. Louis Court of Appeals and that court transferred the case here on the ground that the city of St. Louis, a political subdivision of the State, is a party to the suit.

Plaintiff was a woman thirty years of age. She lived with her parents on Manhattan Avenue, in the city of St. Louis, in her father's house. It is claimed that her injuries were caused by a trespass committed by defendants, in that they unlawfully and wrongfully blasted rocks and earth against the house in which she lived, causing a window in the house to be broken and loosened in its sash, and some days thereafter, a part of the glass pane fell upon and cut and injured plaintiff's right hand and wrist while she was attempting to open the screen on said window.

The defendant, J. J. Dunnegan Construction Company, was engaged in the construction of the River Des Peres sewer under a contract with the city of St. Louis. In the prosecution of this work, rock and earth were blasted from the bed of said river. On one occasion a rock struck and broke a window in the house in question. Plaintiff's father had this window repaired and defendant, construction company, paid the bill for the repairs. Later the window which injured plaintiff was struck by a rock and the glass therein was broken and loosened from the sash. After this window was broken, and before plaintiff was injured, plaintiff's father reported the break to the superintendent of the construction company, who examined the window and told plaintiff's father to repair it and the construction company would pay the bill. The date of this conversation is not shown, but it occurred before plaintiff was injured, and plaintiff's father and mother both testified it might have been three or four days before the injury. Plaintiff's father had the window repaired and the construction company paid the bill, but the repairs were not made until after plaintiff was injured.

880

. The trespass committed by defendants in blasting rock against the house, injured the house but did not injure the plaintiff. She was injured some days later while attempting to raise the window and open the screen, when the glass window pane fell upon and cut and injured her right hand and wrist. There is no question but what plaintiff's father had a cause of action against defendants for the injury to his house, but the alleged liability of defendants for plaintiff's injuries presents another question.

Although defendants were liable to the owner for all damage done to the house, they had no lawful right to go upon the premises and repair the house without permission or consent of the owner. Right to make repairs and duty to make them go hand in hand. If defendants had no right to repair the house, it was not their duty to do so, and for that reason they cannot be held liable because the window was not repaired before plaintiff was injured. [McKinley v. Alliance Trust Company, 168 Mo. 257, 262, 66 S. W. 153.]

Defendants recognized their liability to the owner of the house for the damage done to the window and accordingly adjusted that damage with the owner of the house. Concerning this adjustment, plaintiff's father, the owner of the house, testified:

"Later the dining room window on the side, which was the last one, was broken. It was broken a day or two before Mabel Badock was injured: I don't know whether it was a day or two but it was broken before that. I don't know how long. I had the superintendent and engineer come up there and look at it before the accident happened. I went down there and told them and showed them what happened, and they came up there and looked at it, and said to go ahead and have it put in, and they would pay for it, and that is what we did with both of them; and, of course they paid it."

The owner of the house had a claim against defendants for the damage done to the window. He had a right to adjust that claim in any manner he saw fit. He did adjust it by arranging with defendants to put the window in himself and defendants would pay for it, all of which was finally done. When this agreement was made, the breaking of the window was then a closed incident and, therefore, has no place in this lawsuit. For example, suppose A injures B's dwelling to such an extent that it is dangerous for habitation. Thereafter A, recognizing his liability, settles with B for all damage done to the house. If B thereafter continues to live in the house in its then condition, and it should collapse and injure him or some member of his family, A would not be liable therefor because his liability ceased when he settled with B for the damage done to the house. Such is the situation in this case. However, we are not holding that if no settlement had been made, the owner of the house could continue to maintain the window in its broken and insecure condition and hold defendants liable for all damages that might be caused in

the future by the broken window. What we do hold is that when defendants settled with the owner of the house for the damage done to the window, they dropped out of the picture. After this settlement was made, the maintenance of the window in its unsafe condition by the owner, and not the original breaking of the window was the proximate cause of plaintiff's injury.

Plaintiff contends that she would not have been injured but for the breaking of the window, and for that reason the breaking was the proximate cause of her injury. The actual breaking of the window did not injure her. She was injured because of the unsafe condition of the window after it was broken. Plaintiff's contention as to proximate cause overlooks the fact that when defendants settled with the owner of the house for the breaking of the window, the condition in which the window was thereafter maintained was no concern of theirs.

We have carefully examined all of the many cases cited by plaintiff and find that none of them hold contrary to the conclusion we have reached.

For the reasons stated the judgment awarding a new trial is affirmed and cause remanded. All concur.