**Earlene PATE, Plaintiff-Appellant,**

**v.**

**Eugene REEVES and Tapian Reeves, his wife, Defendants-Respondents.**

**No. 14401.**

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 20, 1986.

Kenneth G. Gibbar, Cape Girardeau, for plaintiff-appellant.

Wendell W. Crow, Crow, Reynolds, & Preyer, Kennett, for defendants-respondents.

PREWITT, Presiding Judge.

Plaintiff was a tenant at an apartment house owned by defendants when she fell from a porch and was injured. She filed a petition seeking damages, contending that defendant was negligent in maintaining a railing on the porch. Plaintiff received a jury verdict for $70,000 and judgment was entered accordingly. Thereafter, the trial court sustained defendant's motion for judgment notwithstanding the verdict, set aside the previous judgment, and entered judgment for defendants. Plaintiff appeals.

The mere relationship of landlord and tenant does not make the landlord liable for injuries to the tenant on the premises. *Erhardt v. Lowe*, 596 S.W.2d 489, 491 (Mo.App.1980). However, a landlord is under a duty to keep those portions of the premises which he retains in his control in a reasonably safe condition and is liable for damages resulting from his failure to do so. Id.

"Common areas" which are used by more than one tenant ordinarily would be in the control of the landlord and the landlord must maintain them in a reasonably safe condition or be liable for damage resulting from the failure to do so. See *Peterson v. Brune*, 273 S.W.2d 278, 280 (Mo.1954). A landlord is not ordinarily liable for injuries resulting from a defective condition in the part of the premises not reserved by the landlord for the common use of two or more tenants but demised to a particular tenant. *Gray v. Pearline*, 328 Mo. 1192, 43 S.W.2d 802, 805 (1931).

The trial court determined that plaintiff did not make a submissible case against defendants, because the defective railing which she claimed caused her to fall was a part of the premises demised to her. The pivotal question here is whether the porch from which plaintiff fell was a "common area" or was an area demised to plaintiff and exclusively within her control.

In reviewing to determine if plaintiff made a submissible case, we look at the evidence, together with the reasonable inferences arising therefrom in the light most favorable to plaintiff, and disregard defendant's evidence, except as it may aid plaintiff's case. *Ward v. McQueen*, 670 S.W.2d 176, 177 (Mo.App.1984).

Plaintiff rented the apartment in February 1983. She fell and was injured on July 27, 1983. Plaintiff was injured as she was throwing a sack of trash into a pickup parked beneath the porch. She testified that she "leaned over too far, reached for the rail to push myself back, and the rail fell through." She fell to the ground one story below. Plaintiff's testimony regarding the rental agreement she made with defendants was as follows:

Q. Mrs. Pendergrass [plaintiff remarried after filing her petition], when you contacted anybody about renting this apartment, that was Tapian Reeves that you talked to; is that right?

A. Yes, sir, it was.

Q. And you never talked to or haven't talked to Gene Reeves, Eugene Reeves, any time about renting the apartment?

A. No, sir.

Q. When you talked to Tapian, this would have been in February of 1983; is that correct?

A. Yes, sir.

Q. And at that time you asked her if she would rent—the apartment was available, and she said it was?

A. Yes, sir.

Q. And you stated you would like to rent it?

A. Yes, sir.

Q. And she told you what the rent would be?

A. Yes, sir.

Q. And it would be payable monthly?

A. Yes, sir.

Q. And you were to put up a deposit?

A. Yes.

Q. And she asked you to give her thirty days' notice if you were going to move out?

A. I don't remember the thirty-day notice. I remember she did say, "Give me a notice," but I don't remember thirty days.

Q. All right. Now, what we've just said, does that constitute the entire agreement? It's my understanding that that's an oral agreement that you had and that was all of it?

A. Yes, sir.

Q. There wasn't any other agreement besides what we just stated between you and the Reeves—

A. No.

Q. —is that correct?

A. No.

Q. Between either one of them; is that correct?

A. Yes, that's correct.

Plaintiff's apartment was on the second floor of the building, previously a one family dwelling which had been remodeled into apartments. The only access to the porch was through plaintiff's apartment and only she and those persons living or visiting with her at the apartment used it. Plaintiff testified that when she rented the apartment she did not ask for the porch. Plaintiff never made any complaint about the railing or asked that any repairs be made to it or the porch. She said she had told her family members not to lean against the railing along the porch.

Upon cross-examination by defendants' attorney, plaintiff testified to the following in regard to her use of the porch:

Q. Mrs. Pate, your family sat out there in lawn chairs on that porch, did they not, when you occupied the apartment?

A. Yes, the older children.

Q. All right. And you all utilized that as a part of the premises that you had consent to use?

A. Yes.

Q. As a matter of fact, at the very time this accident happened, you were not trespassing on some part of the place you weren't supposed to be, were you?

A. No, sir.

Q. You were in a part of your rented apartment at that time, were you not?

A. Yes.

*Gray v. Pearline*, 328 Mo. 1192, 43 S.W.2d 802 (1931), apparently was the principal case the trial court relied on in sustaining defendant's motion for judgment notwithstanding the verdict. Plaintiff attempts to distinguish it because "the landlords in the case at bar were to make repairs; in fact did make repairs; and land- lords' workmen left the porch rail defective and added to or created the unsafe condition of the porch rail." Plaintiff also points out "in the case at bar, the question of control of the porch was presented to the jury. In the *Gray* case, there was no issue of control or repair, and no repairs were made by the landlord prior to the tenant's injury."

In *Gray*, a tenant was injured when she fell from a porch appurtenant to her second floor apartment. The tenant was throwing a small pillow to a neighbor on the second floor of an adjoining apartment house. As she was throwing the pillow, she placed her left hand on the top rail of a bannister along that side of the porch and threw the pillow with her other hand. The bannister broke and she fell to the ground and was injured. There was no agreement to make any repairs of the tenant's apartment and none had been made. The court found the landlord had no duty to make ordinary repairs and he was not liable for injuries resulting from a defective condition in a part of the premises used only by a tenant. The court concluded that the area where the injury occurred was totally demised to the tenant and was not part of the common areas used by two or more tenants.

Here, as in *Gray*, after the fall the landlord repaired the broken rail. The court there, however, found repairs to be insufficient evidence of the landlord's control absent evidence that other tenants also used the porch.

There was no evidence here that the landlord's workmen left the porch rail defective or added to or created the unsafe condition of the rail, only that they used it in remodeling and repairing the premises. Although the question of control of the porch was submitted to the jury by plaintiff's submission instruction, here there was no issue on that for them to determine. That instruction is set forth below.*

---

\* INSTRUCTION NO. 7

Your verdict must be for plaintiff if you believe:

First, there was a rotten porch rail and as a result the porch rail was not reasonably safe, and

Second, the porch rail was in the possession and control of defendants and was used by tenants of defendants with their consent, and

Third, defendant, by using ordinary care could have known of this condition, and

Plaintiff contends that the porch was not part of the premises devised to her just because the only ordinary access to it was through her apartment, as this was also true of the roof and the attic. As a practical matter they are much different. Here, the porch was obviously a part of the apartment, to be used by her, whereas the roof would be for protection for all tenants. The attic might or might not be for her exclusive use, but whether it was does not change the character of the porch. Here, as she admitted in her testimony last quoted above, the porch was a part of her apartment and thus hers to use to the exclusion of other tenants. It is unrealistic to assume that she did not consider the porch a part of the premises she was renting.

That some "repairs" were made here by the defendants does not make them liable for the defect in the railing. There was evidence that plaintiff had called defendant Tapian Reeves when the disposal had become stopped up as the result of plaintiff's son washing pennies in the sink. Mrs. Reeves came by the apartment and removed the pennies from the disposal. On another occasion Mrs. Reeves had sent someone over to check the air conditioning unit after she was called regarding it by plaintiff.

Repairs made, without a binding contractual obligation to repair, after the tenant has taken possession do not show that the landlord has retained partial control for the purpose of making repairs. *Erhardt v. Lowe*, 596 S.W.2d 489, 491 (Mo.App.1980). Repairs by a landlord under no obligation to do so do not impose upon him a duty to continue to repair and where he does not continue, he is not liable for injuries caused by the defective condition of the premises. Id. 596 S.W.2d at 492.

Defendants' motion to dismiss the appeal, previously taken with the case, is denied.

The judgment is affirmed.

HOGAN, FLANIGAN and MAUS, JJ., concur.

Fourth, defendants failed to use ordinary care to make the porch rail reasonably safe, and

Fifth, as a direct result of such failure, plaintiff was injured.